EMERSON B. ROBINSON et al. Defendants in Error, vs. CHARLES G. MILLER et al.—(KURT R. BEAK, Plaintiff in Error.)

Opinion filed June 18, 1925.

1. MORTGAGES—*when a defendant cannot complain of want of service on another.* A defendant to a foreclosure proceeding can not complain for want of service on another party, where, as agent of said party, the defendant invoked the exercise of the court's jurisdiction in resisting the appointment of a receiver, as the principal, only, in such case can complain that the court lacked jurisdiction of his person.

2. SAME—*when defendant cannot complain of order of reference before replication is filed.* A defendant to a foreclosure suit cannot complain that no replication was filed before the order of reference to the master where he participates in the hearing and introduces evidence, as in such case the filing of a replication is waived and the defendant cannot complain of any informality in the order of reference.

3. SAME—*what constitutes "delinquency."* Delinquency means failure or omission of a duty or obligation, and it cannot exist where the duty or obligation has been properly performed.

4. SAME—*when cestui que trust may declare principal due and foreclose for non-payment of taxes.* Upon failure of the grantor in a trust deed to pay taxes, in violation of his covenant, the *cestui que trust* may declare the principal sum due and payable and institute foreclosure proceedings notwithstanding the terms of the note, where the trust deed gives him the right to do so upon the grantor's breach of any of his covenants or agreements.

5. SAME—*when tenders are not sufficient.* A tender made two days prior to institution of foreclosure proceedings and upon an unwarranted condition, and another tender made at the hearing before the master which fails to include the costs accrued and the complainant's solicitors' fees, are not sufficient or effective.

6. SAME—*solicitors' fee cannot be charged as penalty.* Where a trust deed provides for a reasonable solicitors' fee in the event of suit, any part of the fee charged as a penalty because prior to suit the defendant showed a belligerent attitude and threatened to cause the complainant unnecessary expense is improper, as the fee should be based only upon what is reasonable under the facts.

WRIT OF ERROR to the Second Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding.

STEBBINS, GAREY, L'AMOREAUX & HURTUBISE, for plaintiff in error.

KELLY, BURNS & DALY, (JAMES D. MURPHY, of counsel,) for defendants in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The defendants in error, Emerson B. Robinson and the Chicago Title and Trust Company as trustee, on June 30, 1921, filed a bill to foreclose a trust deed dated September 1, 1920, from Charles G. Miller and Nellie Miller, his wife, to the Chicago Title and Trust Company, on an apartment building and ground located at the southeast corner of Forty-first street and Grand boulevard, in the city of Chicago. Robinson had conveyed the property to Miller and the trust deed was given to secure the payment of an indebtedness of $25,000, being a part of the purchase price, evidenced by five principal promissory notes executed by Miller and his wife, for $5000 each, the first due on January 1, 1921, and the other four on or before September 1, 1923, and all bearing interest at six per cent per annum, payable semi-annually. The installments of interest were evidenced by coupons. After setting forth the execution of the notes and trust deed and their pertinent provisions, it was charged in the bill that default had been made in the payment of $3500 of the principal of the note due January 1, 1921, of the interest accrued thereon and of the taxes for the year 1920; that notice of a mechanic's lien for $600 had been filed against the property, and that by reason of these several defaults, and in accordance with the provisions

of the trust deed, Robinson had elected to declare, and by the bill did declare, the whole of the indebtedness immediately due and payable. It was further alleged in the bill that the property was scant security for the payment of the indebtedness due from Miller and his wife; that they were insolvent, and that they had executed a subordinate trust deed on the same property, dated September 4, 1920, to Kurt R. Beak to secure the payment of eighteen notes, dated the same day, executed by Miller, seventeen for $250 each and the last for $4250, due, respectively, October 4, 1920, and monthly thereafter, with interest at six per cent per annum, payable semi-annually, and that Charles E. Cannon appeared to be the owner of the premises of record. Miller and his wife, Kurt R. Beak, individually and as trustee, Cannon, the unknown holders of the notes secured by the trust deed to Beak, and others, were made parties defendant. A petition for a receiver *pendente lite* immediately followed the filing of the bill. While that application was pending, Beak on July 13, 1921, paid the taxes and filed an affidavit stating the fact and that the mechanic's lien had been released of record. On the same day Beak, Miller and wife, and Cannon by Beak, his attorney in fact, filed their petition, verified by Beak, in which they alleged that Beak was the owner of the eighteen notes secured by the trust deed to himself; that Cannon was a resident of California and had constituted Beak his agent and attorney in fact to use such measures, legal or equitable, as in his (Beak's) discretion might be proper or necessary to enforce the payment of the rents from or to secure and maintain possession of the premises, and that Beak was, and for some time had been, in possession of the property and collected the rents derived therefrom. The petitioners asked that they, or some of them, be allowed to give a bond to avoid the appointment of a receiver and that Beak be permitted to retain possession and continue to collect the rents. The petition was granted, and Beak executed a bond with a surety which was approved

by the court. Beak, individually and as trustee, and Miller and his wife, filed an answer, in which they averred that Beak paid the taxes for the year 1920 in due season; that on or about January 10, 1921, in consideration of the guaranty of the note due January 1, 1921, by Beak, Robinson agreed (1) to extend its maturity provided payments of $500 on account of the principal were made every sixty days and the balance paid on or before one year after its date; and (2) that if Beak performed his guaranty the note would be delivered to him uncanceled, with an endorsement that it was subordinated to the payment of the remaining notes secured by the trust deed; that on or about June 18, 1921, Beak, desiring to honor his guaranty, inquired of Robinson the amount due on the note, and upon being advised, on or about June 24, 1921, tendered to Robinson's solicitors the amount claimed, but that they refused to accept the payment tendered and deliver the note to Beak uncanceled; that Beak has been ready, willing and able, and still offers, to pay Robinson, or upon his order, the sum so due and tendered; that Beak performed the agreement on his part and that Robinson is not entitled to the relief sought. No replication was filed to the answer. The cause was referred to a master in chancery, who reported the evidence with his findings, among others, that there was no consideration for the purported extension of the time of payment; that the material allegations of the bill were true, and that the amount due Robinson, including a solicitors' fee of $2500, found to be reasonable, was $28,101.23. The master recommended that the prayer of the bill be granted. Exceptions were taken to his report, but before the hearing upon them, defendants in error on September 7, 1922, pursuant to leave granted, filed an amendment to the bill making additional parties defendant thereto. Beak, and Miller and his wife, filed a demurrer to the amendment, and on November 10, 1922, the demurrer was overruled. On the same day Robinson dismissed the bill as to certain defend-

ants. Exceptions to the master's report were overruled, and on December 16, 1922, a foreclosure decree in accordance with the master's report was entered. Beak, individually and as trustee, prosecuted an appeal to the Appellate Court for the First District, and that court affirmed the decree. He then petitioned this court for a writ of *certiorari*. The petition was granted, and the record is now here by writ of error.

The principal grounds relied upon by the plaintiff in error for a reversal of the decree are: First, that the court erred in finding that it had jurisdiction of the parties and in entering a decree of sale because the service had upon Cannon and the holders of the eighteen notes secured by the subordinate trust deed was based upon insufficient affidavits, the first notice was published eight days after the return day of the summons and the certificate of publication was defective; second, that the order of reference was made before the cause was at issue and conferred no authority upon the master to rule on the admissibility of evidence or to make a report; third, that the suit was prematurely brought, because the time of payment of the note due January 1, 1921, had been extended for a valuable consideration and there was no default under the extension agreement at the time this suit was filed; fourth, that no relief can be awarded because the bill of complaint fails to allege any breach of the extension agreement; fifth, that when the suit was filed there had been no failure to comply with the provision of the trust deed requiring the mortgagor "to pay all taxes and assessments * * * as and when the same shall become due and payable;" sixth, that the allegation that notice of a mechanic's lien had been filed against the property is not a breach of the condition of the trust deed "to suffer no lien of mechanics * * * to attach to said premises;" seventh, that the tender made to Robinson's solicitors prior to the institution of the suit is a valid defense thereto; and eighth, that the allowance made Robin-

son of $2500 for his solicitors' fees is excessive. These assignments will be considered in the order in which they are stated.

*First*—It is not necessary to determine whether constructive service upon Cannon and the holders of the notes secured by the trust deed to Beak was properly obtained. In the petition to avoid the appointment of a receiver by giving a bond instead, Beak acted for Cannon and in his name, as his attorney in fact. He invoked in behalf of his principal the exercise of the court's jurisdiction in resisting the appointment of a receiver and is in no position to assert that Cannon had no notice of the pendency of the suit. Nor was there any necessity to serve the holders of the eighteen notes by publication, for in the same petition, verified by Beak, it was alleged that he owned these notes. Moreover, Beak, the holder of the notes, in due course answered the bill. Cannon makes no complaint that he was not properly served, and under the facts shown by this record he, only, can complain that the court lacked jurisdiction of his person. *Donham* v. *Joyce,* 257 Ill. 112; *Lilois* v. *Glos,* 257 id. 85; *Gottschalk* v. *Noyes,* 225 id. 94; *Culver* v. *Cougle,* 165 id. 417; *Brown* v. *Miner,* 128 id. 148; *Short* v. *Raub,* 81 id. 509; *Fergus* v. *Tinkham,* 38 id. 407.

*Second*—No replication was filed to the answer of Beak and Miller and his wife. The order of reference is: "On motion of Kelly, Burns, Daly & Fitzgerald, solicitors for complainants, it is ordered that the above entitled' cause be and is referred to master E. A. Munger." Beak treated the cause as at issue, and, although notified, made no objection to the reference or the form of the order. Both parties deemed the order valid and pursuant to its authority introduced evidence before the master. Under such circumstances the filing of a replication is waived, (*Keightley* v. *Glass,* 275 Ill. 149; *Guerin* v. *Guerin,* 270 id. 239; *Piot* v. *Davis,* 241 id. 434; *Jones* v. *Neely,* 72 id. 449;) and the plaintiff in error cannot complain of any informality in the

order of reference. *Freese* v. *Glos,* 248 Ill. 280; *Hawley* v. *Simons,* 157 id. 218.

*Third*—While Beak sought an extension of the time of payment of the note due January 1, 1921, yet no such extension was ever effected nor was there any consideration therefor. Robinson accepted partial payments on account of the note after its maturity, but it appears that they were accepted for Beak's accommodation. Robinson insisted that the note was overdue from its original maturity, and at no time did he agree to subordinate the note after its maturity to the remaining notes secured by the trust deed. The evidence sustains the finding of the master and the chancellor in this respect, and the suit was not prematurely brought.

*Fourth*—It was not incumbent upon the defendants in error to allege in their bill of complaint that the time of payment of the first note had been extended and that the plaintiff in error had made default in payment of the note as extended. The defendants in error at no time recognized that the maturity of the note had been postponed. The extension of the time of payment of the note was a defense interposed by the plaintiff in error, and the burden of establishing that defense rested upon him. Since the evidence failed to show that the time of payment of the note had been extended there was no variance between the allegations of the bill and the proofs adduced in their support.

*Fifth*—The grantor in the trust deed is by one of its covenants required to pay all taxes and assessments "as and when the same shall become due and payable." Section 135 of the Revenue act (Smith's Stat. 1923, p. 1731,) requires that the books for the collection of taxes be delivered by the respective county clerks to the collectors on or before the twentieth day after the first day of December, annually, or as soon thereafter as the collectors are duly qualified. By section 155 of the same act (ibid. p. 1733,) every town collector, and every county collector in cases where there is no town collector, shall proceed to collect the taxes upon re-

ceiving the tax books. To collect a tax it must be due and payable. Section 177 of the Revenue act (ibid. p. 1736,) provides: "All real estate upon which taxes remain due and unpaid on the tenth day of March, annually or at the time the town or district collector makes return of his books to the county collector, shall be deemed delinquent; and all such due and unpaid taxes shall bear interest after the first day of May at the rate of one per cent per month until paid or forfeited; parts or fractions of a month shall be reckoned as a month." Delinquency means a failure or omission of duty or obligation. (Century Dict.) It cannot exist where the duty or obligation has been properly performed. Interest at the rate of one per cent per month is imposed by the statute as a penalty for failure to pay the taxes when they are due and payable. To permit the penalty to attach and costs upon the application for judgment and order of sale to accrue would be to increase the charge or burden upon the mortgaged property which it is the purpose of the covenant in the trust deed to avoid. Beak paid the general taxes for the year 1920 on July 13, 1921,— thirteen days after the bill of complaint had been filed and while an application for the appointment of a receiver was pending. At that time a penalty of three per cent had been added to the taxes. Hence there was a breach of the covenant in the trust deed concerning their payment. Such a breach, by another provision of the trust deed, authorized the holder of the notes to declare the principal sum, together with the accrued interest thereon, due and payable, and gave him or the trustee the right immediately to foreclose the trust deed. Upon failure by the grantor in a trust deed to pay taxes, in violation of his covenant, the *cestui que trust* may declare the principal sum due and payable and institute foreclosure proceedings notwithstanding the terms of the note, where the trust deed gives him the right to do so upon the grantor's breach of any of his covenants or agreements. *Gray* v. *Robertson,* 174 Ill. 242.

*Sixth*—Robinson had the right, by the provisions of the trust deed, to declare the whole and entire indebtedness evidenced by the several notes to be due and payable for default in the payment of the balance due on the first note or for failure to pay the taxes for the year 1920 prior to the time they became delinquent. It is therefore unnecessary to consider the contention which concerns the filing of a notice for a mechanic's lien against the mortgaged premises.

*Seventh*—The tender made on June 28, 1921,—two days prior to the institution of the suit,—of an uncertified check for the amount then due on the first note was not an absolute one but upon the condition that the note be surrendered to Beak uncanceled. Robinson's solicitors refused to comply with the condition imposed and Beak withdrew the tender. The same amount was tendered later at the hearing before the master, but it did not include the costs accrued and the fees of Robinson's solicitors earned at the time. The first tender imposed an unwarranted condition and the second was insufficient in amount. Neither was, therefore, effective. *Healy* v. *Protection Fire Ins. Co.* 213 Ill. 99; *Fuller* v. *Brown,* 167 id. 293.

*Eighth*—After the institution of the suit Beak sent the following telegram to Robinson: "In spite of our willingness to pay interest and principal on past due notes in full your attorneys filed foreclosure proceedings on your instructions. Thought you were a gentleman. You will see quite a number of years passed before you receive your money, if at all. I will use every means at my disposal known to law to block every move and question the minutest details of your receiver. I have succeeded in anticipating rents from tenants, some as long as a year. You will have the pleasure to dig in your pockets for expenses and upkeep. There is absolutely no compromise possible under any circumstances. I will fight this thing to the limit." The master's finding with reference to the solicitors' fee, confirmed by the court, is: "I further find that the sum of

$2500 is a usual, customary and reasonable fee for the services rendered and to be rendered in this cause by the solicitors for the complainant under the circumstances shown by the record and the nature of the defense and attitude of the defendant, as shown by his telegram, and the work necessarily involved in meeting a defense predicated upon the attitude of the defendant, and I recommend that the same be allowed herein." The parties had stipulated that the master in chancery might fix the reasonable value of the services, but in determining the amount the master apparently took into consideration the attitude of Beak as evinced by his telegram. If any part of the fee was charged as a penalty it was improper. (*Huber* v. *Brown,* 243 Ill. 274.) The trust deed provided for a reasonable solicitors' fee, and the agreement that the master should fix the amount does not preclude the plaintiff in error from insisting that the sum allowed is unreasonable. What is a reasonable fee depends upon the facts of each case. The facts, alone, should determine the solicitors' fee, and testimony should be taken by or under the direction of the circuit court upon that question.

The judgment of the Appellate Court and the decree of the circuit court are affirmed in all respects except as to the allowance of the solicitors' fee. For the error in respect of that fee, and to that extent only, the judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court, with directions to ascertain the value of the services performed by the solicitors for the defendants in error in the circuit court from the institution of the suit to the entry of the final decree.

*Reversed in part and remanded, with directions.*