GUARDIAN DEPOSITORS CORP. *v.* DAVID STOTT
FLOUR MILLS, INC.

Bills and Notes—Restriction on Action by Holder of Negotiable
Instrument—Reference to Other Instruments.

Negotiable corporate bond containing a reference to trust mortgage "for a description of the property mortgaged and the nature and extent of the security and the rights of the holders of said bonds in regard thereto and the terms and conditions upon which said bonds are issued and secured," is enforceable by bondholder individually in an action at law notwithstanding provision of trust mortgage referred to therein whereby action against the mortgagor was limited to such as were had and maintained only in the name of the trustee for the equal benefit of all the holders of the bonds, since there is no express notice on the face of the bond of any restriction on the right to sue by a holder thereof.

Appeal from Wayne; Murphy (George), J., presiding. Submitted April 14, 1939. (Docket No. 56, Calendar No. 40,450.) Decided December 19, 1939.

Assumpsit by Guardian Depositors Corporation, a Michigan corporation, against David Stott Flour Mills, Inc., a Michigan corporation, for sums due on trust mortgage bonds. Judgment for plaintiff. Defendant appeals. Affirmed.

*Bodman, Longley, Bogle, Middleton & Farley* (*Leslie L. Alexander,* of counsel), for plaintiff.

*David I. Hubar* (*Milton M. Maddin* and *Sidney C. Bernstein,* of counsel), for defendant.

NORTH, J. (*concurring*).   Plaintiff is the holder of past due and unpaid bonds of the par value of $29,300 of the David Stott Flour Mills, Inc., a Michigan corporation.   These bonds are a part of a $400,000 issue secured by a trust mortgage on certain lands, buildings and machinery located in the city of Detroit and owned by the David Stott Flour Mills.   Plaintiff brought suit at law and recovered judgment for the face of its bonds and accrued interest, totalling $37,451.11.   The defendant has appealed, asserting that because of restrictive provisions contained in the trust mortgage and reference thereto in the bonds, the right to bring any action on the bonds under the circumstances of this case is exclusively vested in the trustee named in the trust indenture.

In the body of each bond is found the following provision:

"All of said bonds are equally secured by a trust mortgage dated February 15, 1923, executed by David Stott Flour Mills, Inc., to the Security Trust Company, a corporation organized under the laws of the State of Michigan and having its principal office in the city of Detroit, Wayne county, Michigan, as trustee, to which reference is hereby made for a description of the property mortgaged and the nature and extent of the security and the rights of the holders of said bonds in regard thereto and the terms and conditions upon which said bonds are issued and secured."

The pertinent portion of the trust indenture reads as follows:

"Whenever under the provisions herein above contained it shall have become the duty of the trustee to institute legal proceedings upon the written request of the requisite number of bondholders, and upon tender of indemnity and the trustee shall have

wrongfully or unreasonably refused or failed to act within 30 days after such request and tender of indemnity, then and in such case, but under no other condition, the same number of bondholders who under the provisions hereof have the right to demand action by the trustee may jointly institute such proceedings in law or equity as it was the duty of the trustee to institute, but for the legal benefit of all holders of the bonds and coupons then outstanding; it being the intent hereof that no one or more holders of said bonds shall have the right in any manner whatsoever to affect, disturb or prejudice the lien of this mortgage by his or their action, except that all proceedings in law or equity shall be instituted, had and maintained only in the name of the said trustee for the equal benefit of all the holders of said bonds, except as otherwise expressly provided.''

The issue, as concisely stated in appellant's brief, is as follows:

''May the holder of a corporate bond institute, individually, an action at law on his bonds when same provides that for 'the rights of the holders * * * and the terms and conditions upon which said bonds are issued and secured' reference is made to the mortgage and when the mortgage provides 'that all proceedings in law or equity shall be instituted and maintained only in the name of the said trustee?' ''

Appellant contends that because of the provisions in the bond and the trust mortgage noted in the above quotation, appellee cannot maintain this suit and that the trial judge was in error in holding to the contrary. In order that appellant's position may be sustained two things must appear: first, that there was a valid provision in the trust indenture whereby the right to institute a suit at law to enforce payment of these bonds was, under the circumstances of this case, restricted to the trustee; and second, that there

was contained in the bonds a sufficient notice of this restriction of the right which the bondholder otherwise would have to bring a suit at law to bind such bondholder.

At the outset it may be noted that both parties to this litigation agree that these bonds are negotiable; and therefore the question of the negotiability of such bonds is not here involved.

For the purpose of our decision herein we may assume, although we do not so hold, that the provision above quoted from the trust mortgage is broad enough to bar appellee from prosecuting this suit, provided the notice of such restriction as contained in or referred to in the bonds is sufficient to render the restriction binding upon the bondholder.  In *Mendelson* v. *Realty Mortgage Corp.*, 257 Mich. 442, we said:

"The provisions of the mortgage are incorporated into the bond only insofar as, by proper language, they are made part of the bond and the holder thereby is given notice of them.  *Guilford* v. *Railway Co.*, 48 Minn. 560 (51 N. W. 658, 31 Am. St. Rep. 694). The incident of negotiability in bonds necessary to enable the business of the country to be transacted and the protection of the bondholder from conditions in a mortgage which he ordinarily does not see and which are not set out in the bond which he does see, have properly inclined the courts to a strict construction of language which attempts to modify the obligation of and rights under a bond by incorporation in it, through reference, of provisions of the mortgage.  (Citing numerous cases.)"

The controlling element of decision herein is whether the above-quoted reference in the bond to the trust mortgage restriction (*i. e.* the non-suit provision) was sufficiently specific, unambiguous and

manifest to charge the bondholder with knowledge that in the event of default he could not bring a suit at law on the bond. As stated in its brief appellee's contention is:

"The language used in the face of the bond is not sufficient to put a holder thereof on notice that the trust indenture contains provisions which may restrict his right to sue at law on said bonds."

In this connection it must be noted the very first provision in this bond recites that the obligor "acknowledges itself to be indebted and for value received hereby promises to pay to the bearer (or in case of registration, to the registered owner hereof)" the face value of the bond at a time specified. This is a definite undertaking of the obligor to pay the bond as a direct and unconditional pledge or obligation. It is such an obligation as would obviously vest the holder with the right to sue at law in case of default. As against this plain undertaking, the reference in this bond to the restrictive provision of the trust indenture upon which appellant relies is rather obscurely embodied in the middle portion of the bond, which is of such length that it covers more than three pages of the printed record. And if by this reference, the limitation in the trust mortgage restricting the bondholder's right to sue at law is to be held to be a part of the bond, it results in the bond containing directly conflicting provisions in this particular.

The "reference" in the bond to the provisions of the trust mortgage by no means directly challenges attention to the bondholder's inability to enforce the bond obligation by a suit at law. Instead this same "reference" is for sundry purposes, such as the description of the mortgaged property, the nature and extent of the security, the right of the bondhold-

ers in such security, and "the terms and conditions upon which said bonds are issued and secured." This we think is clearly too obscure and indefinite to constitute notice of a restriction in the trust mortgage which would deprive the bondholder of his right to bring a suit at law. Especially is this true in view of the primary obligation specifically and conspicuously embodied in the first paragraph of the bond, as above noted.

In a comparatively recent case from which we are about to quote it was noted that there is some conflict in this phase of the law; but we there said:

"The better rule, as we view it, is that announced in the New York and Illinois cases above referred to and the cases cited in support thereof. The form of the note or bond may alone be considered in determining its negotiability. The mortgage or trust agreement, *unless referred to in a way to incorporate its provisions into the note or bond,* is but an incident thereto, and is to be regarded as a security only. If the note or bond contains 'an unconditional promise or order to pay a sum certain in money' at 'a fixed or determinable future time' and is 'complete and regular upon its face,' it may be enforced according to its terms." *Paepcke* v. *Paine,* 253 Mich. 636, 641 (75 A. L. R. 1205).

In the *Paepcke Case* the "reference" in the bond to the trust indenture was, for the purposes of decision herein, equally as broad and no more indefinite than in the instant case; the "reference" there being:

"For a statement of the terms under which the said debentures are issued and the rights and obligations of the company, of the trustee and of the respective holders of the said debentures under the said trust agreement."

In passing upon this "reference" we said: "This provision in the bond contains no intimation that the promise to pay, or the time of payment, is affected thereby;" and in this same case it was noted that there was a clear distinction between provisions of this character and those in the following cases upon which appellant herein seeks to rely. *Allan* v. *Moline Plow Co.* (C. C. A.), 14 Fed. (2d) 912; *Crosthwaite* v. *Moline Plow Co.*, 298 Fed. 466.

In a somewhat recent case we held: "A reference in the bond to a mortgage to determine upon what conditions it was issued does not impair its negotiability." *Merchants National Bank* v. *Detroit Trust Co.*, 258 Mich. 526, 531 (85 A. L. R. 350).

By statute in this State a bondholder may sue at law to enforce the contract obligation.

"The holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument." 2 Comp. Laws 1929, § 9300 (Stat. Ann. § 19.93).

It is not too much to hold that in substance a provision or reference in a bond intended to restrict the holder's right to sue at law thereon should be reasonably certain and manifest. It must be clearly expressed. 11 C. J. S. p. 466. It should be such that it would not fail to challenge the attention of a reasonably cautious investor. Therefore if the provision is ambiguous, or conflicting with other plain terms of the bond, or is only inconspicuously embodied in the bond, it should be held to be ineffective as against the right of the bondholder to sue. This should be, and we think is, the rule because of the commercial necessity of preserving the integrity of instruments commonly accepted as negotiable. Otherwise reasonably cautious investors would be deceived and

misled as to the character of investments and their rights thereunder.

The holding of the circuit judge is not only in accord with the decisions of this State hereinbefore cited, but also with those of other jurisdictions. In *Berman* v. *Consolidated Nevada-Utah Corp.*, 132 Misc. 462 (230 N. Y. Supp. 421) there was involved a reference provision which in effect was identical with the one in case at bar. It read:

"Reference to which indenture is hereby made for a statement of the nature and extent of the security, the rights of the holders of bonds, and the terms and conditions upon which the bonds are issued."

Notwithstanding this provision in the bond and a non-suit provision in the trust indenture, the court held that the holder of the bond could sue at law. The following from the court's opinion is quite applicable to the instant case:

"Such a limitation is inconsistent with the unconditional obligation to pay contained in the bonds, even though reference is made in the bond to the indenture.  *  *  *  The only conclusion to be drawn is that the unconditional obligations to pay contained in the bonds and coupons must prevail over the inconsistent provision of the indenture, which attempts to limit the rights of the holders of the bonds and coupons to bring suit when the obligations of the bonds and coupons are not met. The application for summary judgment must, therefore, be granted."

In another case affirmed by the court of last resort in New York it was held:

"The provisions of the bonds meet the eye of the purchaser and are designed by the corporation to influence their sale, and they cannot be nullified by an inconsistent provision contained in the trust deed. As before stated, these bonds and coupons contain

an absolute promise to pay definite sums on specific dates, which implies a right of action in case of failure, and if the eighth article is capable of the construction contended for by the corporation it is utterly inconsistent with the bonds, which in that case must prevail.'' *Rothschild* v. *Railway Co.*, 84 Hun, 103, 110 (32 N. Y. Supp. 37), affirmed in 164 N. Y. 594 (58 N. E. 1092).

Another New York case in harmony with our holding herein, which New York decision has frequently been cited with approval in this State, is reported in *Enoch* v. *Brandon*, 249 N. Y. 263 (164 N. E. 45). There are numerous other New York decisions of like purport which we deem it unnecessary to cite. The following cases from the State of Illinois on this phase of the law are in accord with our decision herein. *Oswianza* v. *Wengler & Mandell, Inc.*, 358 Ill. 302 (193 N. E. 123); *Continental National Bank & Trust Co. of Chicago* v. *Chicago Builders Building Corp.*, 283 Ill. App. 64; *Benson* v. *Schwerin*, 285 Ill. App. 121 (1 N. E. [2d] 813). See, also, *Guilford* v. *Railway Co.*, 48 Minn. 560 (51 N. W. 658, 31 Am. St. Rep. 694).

Judgment entered in the circuit court is affirmed, with costs to appellee.

WIEST and McALLISTER, JJ., concurred with NORTH, J.

BUTZEL, C. J. I cannot agree that the reference to the clause referring the bondholder to the trust mortgage in order to ascertain the terms and conditions upon which the bonds were issued and secured is obscure or indefinite. It is inconspicuous because grouped with matters not controlling the right to sue on the bond, but it distinctly refers to the trust mortgage and the ''terms and conditions on which said bonds are issued and secured.'' We have con-

sistently held that reference in the bond to the mortgage for other conditions was sufficient. *Morley* v. *University of Detroit,* 263 Mich. 126; *Michigan Trust Co.* v. *Grand Rapids Hotel Co.,* 265 Mich. 328; *Thatcher* v. *Detroit Trust Co.,* 288 Mich. 410 (122 A. L. R. 282).

It seems that similar wording in a bond that refers to a mortgage forbidding an action by an individual bondholder has been upheld by both State and Federal decisions in the numerically larger number of cases and jurisdictions where the question has arisen. On the other hand, such mere reference has been held insufficient by the courts of New York and Illinois. The two viewpoints are irreconcilable as will be shown by the large number of decisions collated in 108 A. L. R. 88. The Federal courts and probably a numerical majority of the State courts also have carried the doctrine of constructive notice to the ultimate extreme in an endeavor to enforce no-action provisions in the trust instruments. Other cases indicate such reluctance to interfere with the normal right of the bondholder to bring his action that what would be sufficient incorporation by reference in all other instances has been deemed insufficient to incorporate provisions of the mortgage restraining suit on the bonds. See 41 Yale Law Journal, p. 312; 27 Columbia Law Review, pp. 443, 448. Manifestly, both procedures are open to criticism. It seems, however, the more reasonable, ethical and business-like approach is to demand that the restriction upon the right to sue for payment of the note or bond on maturity should appear upon the face thereof. This view is stated in *Cunningham* v. *Pressed Steel Car Co.,* 238 App. Div. 624 (265 N. Y. Supp. 256), affirmed in 263 N. Y. 671 (189 N. E. 750), where the court said:

"If there was to be a restriction upon defendant's obligation to pay at maturity, then the bondholder

was entitled to receive notice thereof in reasonably clear language expressed in the face of the bond. The mere reference to the indenture for a statement of the rights of the holders is not enough to take away by implication, drawn from another instrument, plaintiff's right to sue upon defendant's positive acknowledgment of and unconditional promise to pay the debt."

By thus requiring express notice on the bond, we preclude repeated litigation to determine whether the referential language in any kind of bond issue is adequate or not. We eliminate once and for all the vexing problem of negotiable corporate bonds, which is not questioned in the instant case. In coming to this conclusion, we need not discuss the prohibitory language of the indenture in the instant case which is believed by some of us to be insufficient to prevent suit on the bond.

I concur in affirmance.

BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred with BUTZEL, C. J.