(No. 58826.—

KAMAL W. ABDUL-KARIM *et al.*, Appellants, v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHAMPAIGN, Appellee.

*Opinion filed April 4, 1984.*

402

UNDERWOOD, J., took no part.

James A. Martinkus, of Erwin, Martinkus, Cole & Ansel, of Champaign, for appellants.

Gary R. Lietz, of Franklin, Flynn & Palmer, of Champaign, and Thomas B. Cassidy, of Martin, Craig, Chester & Sonnenschein, of Chicago, for appellee.

John L. Swartz, of Griffin, Winning, Lindner, Newkirk, Cohen & Bodewes, P.C., of Springfield (James M. Winning, of counsel), for *amicus curiae* Illinois League of Savings Institutions.

JUSTICE SIMON delivered the opinion of the court:

This appeal presents the flip side of the factual situation we considered in *Provident Federal Savings & Loan Association v. Realty Centre, Ltd.* (1983), 97 Ill. 2d 187, in which we permitted the enforcement of a due-on-sale clause. In that case the note set forth the due-on-sale clause and incorporated by reference all of the provisions of the mortgage. The mortgage did not contain a due-on-sale provision, but it did state that it was " '[t]o secure performance of the *** agreements in said note, which are hereby incorporated herein and made a part hereof ***.' " 97 Ill. 2d 187, 190.

In this case the note executed by the plaintiffs and secured by a properly recorded mortgage which the plaintiffs acknowledged they executed neither contained a due-on-sale clause nor incorporated the mortgage by reference. The note had no default provision except for one relating to default in timely payment of principal and interest and providing in that event for acceleration of the due date of the principal sum. The only reference in the note to the mortgage was the following sentence:

> "This note is secured by mortgage of even date to said Association on real estate located in Champaign County."

The mortgage both evidenced the debt and contained a due-on-sale clause. It stated:

> "*** to secure the payment of one promissory note of even date herewith, executed by the said mortgagors *** in the principal sum of FORTY THOUSAND DOLLARS ($40,000.00), and payable to the order of said mortgagee *** with interest at 9¼ percent per annum, both principal and interest being payable in monthly installments of $367.00 on or before the 20th day of each month *** [In] case of the sale of said real estate without the written consent of the mortgagee *** then all said mortgage indebtedness shall be at the option of the mortgagee become due and payable, and this mortgage may be foreclosed, the foreclosure suit to be sufficient notice and evidence of the exercise of such option."

Thus, this case presents a due-on-sale clause which appeared in the mortgage but was neither incorporated nor referred to in the note.

Plaintiffs, who desired to sell their mortgaged property, sought a declaratory judgment that the due-on-sale clause in the mortgage was unenforceable because of the absence of a similar clause in the note. The complaint also prayed for an injunction to prevent the lender from enforcing that clause in the mortgage or changing the interest rate. The circuit court of Champaign County allowed the motion of the defendant, First Federal Savings and Loan Association

of Champaign, the mortgagee and holder of the note, for summary judgment and the appellate court affirmed (116 Ill. App. 3d 579). We allowed the mortgagor's petition for leave to appeal. 87 Ill. 2d R. 315.

This court recognizes due-on-sale provisions as valid *per se*. (*Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119.) We recently adhered to that holding in *Provident Federal Savings & Loan*, although the rule that due-on-sale clauses are *per se* valid has been criticized by one recent commentator. See McGuire, *The Due-On-Sale Controversy: Restraints on Alienation and Federal Regulation of Real Estate Mortgages after de la Cuesta and the Garn-St. Germain Act*, 1982 S. Ill. U. L.J. 487, 510-11.

The plaintiffs rely on two decisions which declared that the general rule of contract law that documents executed at the same time as a part of the same transaction should be read and construed as a single instrument does not apply in the case of a note and a mortgage securing the note. (*Conerty v. Richtsteig* (1942), 379 Ill. 360, 365; *Oswianza v. Wengler & Mandell, Inc.* (1934), 358 Ill. 302, 306.) Those decisions recognized an exception in that case and regarded each instrument as a separate undertaking. *Oswianza* held that the noteholder may sue on a matured note without foreclosing on the mortgage instrument even though the latter instrument precludes his taking such action without the approval of other noteholders. If such preclusion provisions are not expressly set forth in the note or bond, the court announced in *Oswianza*, the creditor may ignore the mortgage entirely and sue on the note at maturity. Consistent with the conclusion reached in *Oswianza*, we see no reason why the mortgagee may not foreclose on the real estate subject to the mortgage and disregard the personal obligation the maker of the note assumed in executing the note. *Oswianza* did not consider whether the parties may agree upon additional terms to be

contained in the mortgage without restricting the common law action on the note, and it does not prohibit rights of action with respect to the security in addition to those based upon the note.

The question in *Conerty v. Richtsteig* (1942), 379 Ill. 360, 365, was whether a provision incorporated in the mortgage but not in the note could be the basis for imposing personal liability on the maker of the note. *Conerty* dealt with the personal liability of the maker of a note which had been assumed by a third party when the noteholder granted extensions of time for payment to the third party without the knowledge of the maker. The trust deed, but not the note, permitted such extensions. Here, the mortgagee is not seeking to impose personal liability on the plaintiffs, the makers of the notes, but only to foreclose on the mortgage in the event the mortgagor breaches a condition of the mortgage.

Neither *Oswianza* nor *Conerty* present any basis for restricting a mortgagee from electing to enforce its rights under the mortgage rather than the note and foreclosing as the mortgage permits him to do. This conclusion is buttressed by the holdings in both cases that the mortgage and note represent separate and distinct covenants. The note is evidence of the personal liability on the part of the maker, while the mortgage represents a pledge of real estate as security and creates a lien on the property pledged. In fact the language in both *Oswianza* and *Conerty* is more helpful to the defendant (the mortgagee) in this case than to the plaintiffs (the mortgagors). In *Oswianza*, the court said:

> "True, if he [the bondholder] would seek to enforce the trust deed he is bound to follow and is limited by its provisions, but it does not follow that when he waives the security and sues by virtue of his common law right there is notice to him that his bond, by reference to the trust deed or otherwise, denies him that right. *** Enforce-

ment against the security and a suit at law are matters of radically different import, and to destroy the right to sue at law, a provision of such character in the trust deed must be included in the bond, expressly or by clear reference thereto." *Oswianza v. Wengler & Mandell, Inc.* (1934), 358 Ill. 302, 307-08.

The relevant observations of the court in *Conerty* were:

"[T]he note and mortgage are separate undertakings. The note relates to, and contains the contract of the maker to pay the debt and is wholly independent of the mortgage. The mortgage is not dependent upon the note executed by the mortgagors, for its validity. The note which is the evidence of the indebtedness may be made by third parties, or a mortgage may be valid where there is no note given. The mortgage relates only to the real estate pledged as security for the payment of the debt.

\* \* \*

It has been held by the courts of several States that a provision in a mortgage for an acceleration of maturity extends only to the right to foreclose the mortgage and subject the property pledged to the payment or reduction of the debt, and that the mortgage and note are separate contracts. The mortgage is applicable to the right to apply the security to the discharge of the debt and the note to the liability of the maker for the payment of that indebtedness." *Conerty v. Richtsteig* (1942), 379 Ill. 360, 365, 366-67.

Neither *Oswianza,* nor *Conerty,* nor any Illinois decision plaintiffs have invited to our attention requires simultaneous action by a mortgagee or noteholder with respect to both the note and the mortgage by pursuing the maker on the note for a deficiency judgment while at the same time foreclosing on the mortgage to enforce provisions not contained in the note. On the contrary, Illinois law appears to leave the creditor free to elect to sue on the note or foreclose on the mortgage or both. In the absence of provisions to the contrary contained in the note or mortgage, the noteholder has the option of filing a personal action

against the maker of the note or pursuing whatever remedies the mortgage instrument provides. In the latter event, the mortgagee gains possession of the property, but he does not receive a judgment for any deficiency. The argument of the plaintiffs that *Oswianza* and *Conerty* remain controlling authority for the proposition that clauses in security instruments cannot affect notes unless they are also set forth in the note or at least incorporated by reference is sound, but here the question is whether the lender can foreclose on the mortgage without taking action on the note.

In *Provident Federal*, the purchasers as well as the mortgagor contended unsuccessfully that the due-on-sale clause was not enforceable because although set forth in the note, it did not appear on the face of the mortgage. There can be no question in this case that the mortgage gave sufficient notice to the mortgagors who executed it as well as to alert prospective purchasers with whom the mortgagors may be dealing, although in this case no purchase from the mortgagors has been consummated. Our language in *Provident Federal* is relevant here. In that case we said:

> "[R]eferring to statutes for the recording of real property interests *** when a purchaser has notice of facts sufficient to put a reasonable man on inquiry, the purchaser is charged with notice of all of the facts he could have discovered by a diligent inquiry." *Provident Federal Savings & Loan Association v. Realty Centre, Ltd.* (1983), 97 Ill. 2d 187, 193.

The plaintiffs rely on *2140 Lincoln Park West v. American National Bank & Trust Co.* (1980), 88 Ill. App. 3d 660, the facts in which were similar to those here. That decision, however, misapplied *Conerty* and *Oswianza*, and to the extent it held that the mortgage provision provided a covenant without a remedy (88 Ill. App. 3d 660, 664), the holding was in error.

The plaintiffs argue that there can be no foreclosure of the mortgage because the note does not provide for an acceleration of the indebtedness based on a sale of the premises. It is not necessary, however, to accelerate a note before foreclosing on the mortgage which secures the note. (*Robinson v. Miller* (1925), 317 Ill. 501; *Gray v. Robertson* (1898), 174 Ill. 242 (involving foreclosures upon failure of mortgagors to pay real estate taxes required by mortgages).) The provisions of the mortgage executed by the plaintiffs in this case permit acceleration of the mortgage indebtedness even though the personal obligation of the makers of the note is not affected and no deficiency judgment can be entered. A noted commentator has set forth what we believe to be the accurate statement of the law on this subject:

> "[I]t is traditional with mortgagees in many jurisdictions to seek in one action, i.e., the foreclosure suit, foreclosure of the lien of the mortgage and also a deficiency decree or judgment against the mortgagor for any unpaid balance remaining after the foreclosure sale has resulted in the customary pro tanto satisfaction of the mortgage debt. If an acceleration is declared for breach of a mortgage covenant *** and a comparable event of default permitting an acceleration of the mortgage note is not set forth in such note, in many states the mortgagee can foreclose his mortgage but he cannot obtain a deficiency judgment. Likewise, there is a problem if the mortgage contains an acceleration clause but the note does not. All courts hold that in case of default the acceleration clause in the mortgage can be invoked and the mortgage may be foreclosed for the full amount of the mortgage debt. However, some courts hold that the mortgagee cannot obtain a deficiency judgment because by its terms the note is not yet due. *Connerty [sic] v. Richsteig [sic]*, 379 Ill. 360, 41 N.E.2d 476." R. Kratovil, Modern Mortgage Law & Practice sec. 122, at 84 (1st ed. 1972).

Finally, the plaintiffs argue that when foreclosure of the mortgage is permitted without acceleration of the in-

debtedness on the note, the maker of the note may be exposed to double payment on the note if it comes into the possession of a subsequent holder in due course. This problem, if it is one, is not before us in this case because nothing in the record establishes that the mortgagee does not also hold the note, and obviously the mortgagee would be accountable to a holder in due course for anything it had already collected on the note. In addition, any holder in due course is notified by the terms of the note that there is a mortgage and no holder in due course could take the note without anticipating and inquiring whether the mortgagee had collected any amounts owing as the result of a mortgage foreclosure. The proceeds of the foreclosure, like any other prepayment of the indebtedness, would be credited against the debt, and a purchaser of the note cannot assume that the face amount of the note is still outstanding, but must make some inquiry to determine what the current balance is when the note comes into his possession. To make certain that he is not exposed to double liability, the mortgagor can insist that the note be presented by the party seeking to foreclose and that the foreclosure proceeds be credited on the face of the note, just as he could demand that the noteholder acknowledge each prepayment on the face of the note.

Inasmuch as our State law permits the enforcement of the due-on-sale clause included in the mortgage executed to secure the loan in this case, *Fidelity Federal Savings & Loan Association v. de la Cuesta* (1982), 458 U.S. 141, 73 L. Ed. 2d 664, 102 S. Ct. 3014, presents no obstacle to the mortgagee. In *Fidelity Federal* the Supreme Court held that a Federal regulation authorizing due-on-sale clauses included in instruments governing loans granted by Federal savings and loan associations preempted any conflicting State restrictions with respect to enforcing such limitations. The thrust of the regulation, as we per-

ceive it, was not to particularize in which portion of the documents relating to a loan the due-on-sale clause should appear or in what manner it should be set forth, as the plaintiffs contend. Its sole intent and purpose was to insure that due-on-sale clauses would be enforceable, notwithstanding impediments that might be imposed by State law. See *Provident Federal Savings & Loan Association v. Realty Centre, Ltd.* (1983), 97 Ill. 2d 187, 191.

The defendant contends that the circuit court erred when it denied the claim of the defendant for attorney fees it incurred in this proceeding. It contends that the appellate court likewise erred when it refused to review the circuit court's ruling on fees as well as when it rejected the defendant's claim for fees incurred because of the appeal to the appellate court. The defendant's claim is based on the following provision in the mortgage:

"If the mortgagee *** be a party to any suit, *** relating to the premises *** all costs of such proceedings, and any review thereof, including all reasonable attorney's and solicitor's fees so incurred by the mortgagee *** shall become a part of the mortgage indebtedness *** and may be included in any judgment or decree rendered."

No cross-appeal was filed in the appellate court by the defendant; for that reason the appellate court held that the question of whether fees were properly denied by the circuit court was waived by the defendant even though the issue was raised in the defendant's appellate court brief. The defendant likewise requested in its brief in this court that it be awarded attorney fees for its appeal to this court as well as to the appellate court.

The defendant contends that it should have been compensated for attorney fees it incurred in the circuit and appellate courts because the above-quoted provision of the mortgage provides for such reimbursement. Provisions in

contracts for awards of attorney fees are an exception to the general rule that the unsuccessful party is not responsible for payment of such fees. (See, *e.g., Northern Trust Co. v. Sanford* (1923), 308 Ill. 381, 389-90; *Huber v. Brown* (1909), 243 Ill. 274, 278.) However, the authority of a court to enforce contracts is controlled by the rules and procedures which govern procedures in litigation and insure that those against whom a claim is made have notice of the claim and adequate opportunity to present a response. Reviewing courts in this State refuse to consider complaints raised by an appellee in his brief concerning action taken by the circuit court when he has failed to file a cross-appeal from the circuit court's decision. (See *Fender v. Yagemann* (1963), 29 Ill. 2d 205, 210; *Bryant v. Lakeside Galleries, Inc.* (1949), 402 Ill. 466, 471; *De Phillips v. Mortgage Associates, Inc.* (1972), 8 Ill. App. 3d 759, 762.) The appellate court, therefore, properly dismissed the defendant's challenge to the circuit court's denial of fees. In disposing of this aspect of the case, the circuit court ruled that the provision for attorney fees in the mortgage did not include the instant declaratory judgment litigation, and the defendant having failed to appeal from that decision, that interpretation is binding upon the appellate court and this court. There is consequently no basis for an award of attorney fees to the defendant for either of the plaintiffs' appeals.

Finally, plaintiffs in their reply brief argue that it is they who should be awarded attorney fees because of the defendant's attempt to resurrect its demand for attorney fees in its brief in this court without filing a cross-petition on the issue. We do not believe that the defendant, by raising in this court its entitlement to attorney fees, has violated any statutory directive or court rule, the only possible basis on which plaintiffs might prevail (Ill. Rev. Stat. 1981, ch. 110, par. 1—105), and we therefore decline to award attorney fees to either of the parties.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE UNDERWOOD took no part in the consideration or decision of this case.